UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | |
|---|---|
| MEGAN JOY PARISH,<br><br>Plaintiff,<br><br>v.<br><br>COMMISSIONER OF SOCIAL SECURITY,<br><br>Defendant. | Case No. 3:25-CV-313-CCB |

**OPINION AND ORDER**

Before the Court is Plaintiff Megan Joy Parish's appeal of the Social Security Administration's December 13, 2024, decision denying Ms. Parish's claim. (R. 7). In that decision, an Administrative Law Judge ("ALJ") of the Social Security Administration denied Ms. Parish's claim for disability insurance benefits ("DIB"). Now Ms. Parish seeks remand of that decision. Ms. Parish's request is granted. Her case is remanded for further consideration.

**ANALYSIS**

**A. Standard of Review**

A claimant who is found to be "not disabled" may challenge the Commissioner's final decision in federal court. This Court must affirm the ALJ's decision if it is supported by substantial evidence and free from legal error. 42 U.S.C. § 405(g); *Steele v. Barnhart*, 290 F.3d 936, 940 (7th Cir. 2002). Substantial evidence is "more than a mere scintilla of proof." *Kepple v. Massanari*, 268 F.3d 513, 516 (7th Cir. 2001). It means "evidence a reasonable person would accept as adequate to support the decision."

*Murphy v. Astrue*, 496 F.3d 630, 633 (7th Cir. 2007); *see also* *Diaz v. Chater*, 55 F.3d 300, 305 (7th Cir. 1995) (defining substantial evidence as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.") (citation and quotations omitted). In determining whether there is substantial evidence, the Court reviews the entire record. *Kepple*, 268 F.3d at 516. But that review is deferential. *Skinner v. Astrue*, 478 F.3d 836, 841 (7th Cir. 2007). A reviewing court will not "reweigh evidence, resolve conflicts, decide questions of credibility, or substitute [its] own judgment for that of the Commissioner." *Lopez v. Barnhart*, 336 F.3d 535, 539 (7th Cir. 2003) (quoting *Clifford v. Apfel*, 227 F.3d 863, 869 (7th Cir. 2000)). Nonetheless, if, after a "critical review of the evidence," the ALJ's decision "lacks evidentiary support or an adequate discussion of the issues," this Court will not affirm it. *Lopez*, 336 F.3d at 539 (citations omitted).

While the ALJ need not discuss every piece of evidence in the record, he "must build an accurate and logical bridge from the evidence to [the] conclusion." *Dixon v. Massanari*, 270 F.3d 1171, 1176 (7th Cir. 2001). Further, the ALJ "may not select and discuss only that evidence that favors his ultimate conclusion," *Diaz*, 55 F.3d at 308, but "must confront the evidence that does not support his conclusion and explain why it was rejected," *Indoranto v. Barnhart*, 374 F.3d 470, 474 (7th Cir. 2004). Ultimately, the ALJ must "sufficiently articulate his assessment of the evidence to assure" the Court that he "considered the important evidence" and allow the Court "to trace the path of the ALJ's reasoning." *Carlson v. Shalala*, 999 F.2d 180, 181 (7th Cir. 1993) (quoting *Stephens v. Heckler*, 766 F.2d 284, 287 (7th Cir. 1985) (internal quotation marks omitted)).

**B. Procedural Background**

Ms. Parish first applied for DIB on December 5, 2022, alleging disability beginning September 13, 2022. (R. 10). This claim was denied initially, and upon reconsideration. (*Id.*) She then filed a written request for a hearing. This request was granted, and a telephonic hearing was held before an ALJ on November 19, 2024. (*Id.*) On December 13, 2024, the ALJ issued an unfavorable decision. (R. 7)

**C. The ALJ's Decision**

A person suffering from a disability that renders her unable to work may apply to the Social Security Administration for disability benefits. *See* 42 U.S.C. § 423(d)(1)(A) (defining disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months"). To be found disabled, a claimant must demonstrate that her physical or mental limitations prevent her from doing not only her previous work, but also any other kind of gainful employment that exists in the national economy, considering her age, education, and work experience. *See* 42 U.S.C. § 423(d)(2)(A). If a claimant's application is denied initially and upon reconsideration, she may request a hearing before an ALJ. *See* 42 U.S.C. § 405(b)(1).

When deciding whether to grant or deny benefits, an ALJ conducts a five-step inquiry: (1) whether the claimant is currently employed, (2) whether the claimant has a severe impairment, (3) whether the claimant's impairment is one that the Commissioner considers conclusively disabling, (4) if the claimant does not have a conclusively

disabling impairment, whether she has the residual functional capacity to perform her past relevant work, and (5) whether the claimant is capable of performing any work that exists in significant numbers in the national economy. *See* 20 C.F.R. §§ 404.1520(a); 404.1560(c)(2); *Zurawski v. Halter*, 245 F.3d 881, 885 (7th Cir. 2001). An answer in the affirmative in steps one through four stops the inquiry and the claimant is found to be not disabled. If steps one through four are answered in the negative, the ALJ proceeds to step five, where the burden rests on the Commissioner. *Weatherbee v. Astrue*, 649 F.3d 565, 569 (7th Cir. 2011).

Here, at step one, the ALJ found that Ms. Parish has not engaged in substantial gainful activity since her alleged onset date of September 13, 2022. (R. 12). At step two, the ALJ found that Ms. Parish has the following severe impairments: degenerative disc disease of the lumbar spine, obesity, history of metatarsal stress fracture of the left foot, asthma, chronic pain syndrome, fibromyalgia, general anxiety disorder, post-traumatic stress disorder, major depressive disorder, bipolar disorder, attention deficit hyperactivity disorder, and personality disorder. (R. 12–13). The ALJ also found that Ms. Parish has the following nonsevere impairments: hypothyroidism, irritable bowel syndrome, headaches, history of pituitary microadenoma, and gastroesophageal reflux disease. (R. 13).

At step three, the ALJ determined that Ms. Parish does not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1. (R. 14). At step four, she determined that Ms. Parish

> has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) except the claimant can stand and walk for 4 hours in 8-hour workday. She can have no climbing ladders, ropes, or scaffolds and no kneeling or crawling. She can occasionally perform all other postural maneuvers as defined in the SCO. The claimant can have no overhead reaching with the bilateral upper extremities, but can reach frequently in all other directions. She can frequently handle and finger with the bilateral upper extremities. She must avoid concentrated exposure to humidity, temp extremes, and pulmonary irritants, and must avoid hazards, such as dangerous moving machinery and unprotected heights. She can tolerate moderate or less noise environments and no lights brighter than typical office setting. She can understand, remember, and carry out simple instructions. The claimant can have no assembly-type pace jobs or strict hourly production quotas. She can have occasional interaction with others, but no joint or tandem tasks with coworkers, and no sustained public interaction.

(R. 17). The ALJ found that Ms. Parish cannot perform any past relevant work.

(R. 25).

At step five, the ALJ found that, considering Ms. Parish's age, education, work experience, and residual functional capacity, there were jobs that exist in significant numbers in the national economy that she could perform. (R. 26). Based on these findings, the ALJ determined that Ms. Parish was not disabled as defined in the Social Security Act from September 13, 2022, through the date of the decision. (R. 27)

**D. Issues on Appeal**

Ms. Parish argues that the ALJ's decision should be reversed because the ALJ's decision at step five was based upon unreliable vocational expert ("VE") testimony, leaving this Court unable to meaningfully review the ALJ's determination.

At step 5, the ALJ noted that the VE highlighted three representative light work jobs Ms. Parish's RFC would permit her to perform. The ALJ included the vocational

expert's approximation of the number of those jobs that existed in the national economy:

> General office helper (DOT# 239.567-010 with 5,000 jobs nationally), Inspector packer (DOT# 559.687-074 with 4,000 jobs nationally), Assembler (DOT# 739.687-034 with 30,000 jobs nationally).

(R. 26). Together, the number of representative jobs total 39,000.[1] The ALJ then found that "there appears to be no conflict between the DOT, the SCO, or the vocational expert's testimony," and therefore "accept[ed] the vocational expert's testimony." (R. 26–27). "Based on the testimony of the vocational expert," the ALJ concluded that jobs Ms. Parish can perform exist in significant numbers in the national economy. (R. 27).

But, as Ms. Parish points out, there was a conflict between the DOT and the VE's testimony. The DOT number identified for the position of "assembler" in the VE's testimony and incorporated into the ALJ's opinion, DOT# 739.687-034, actually belongs to the position of "beader,"a role with only 39 jobs in the national economy. (ECF 14 at 8). Based on the DOT numbers identified, the representative positions listed by the VE would include only approximately 9,039 jobs in the national economy. This, Ms. Parish contends, would place the number of jobs in the national economy that she could perform well below lowest numbers that courts in the Seventh Circuit have found significant.

The Commissioner responds by arguing that (1) Ms. Parish waived her challenge to the VE's methodology by failing to raise it at the administrative level, and (2) the VE

---

[1] The ALJ also noted that "the vocational expert testified that even if the claimant were limited to the sedentary exertional level, there were jobs that the claimant could perform," but did not offer any detail as to those jobs. (R. 26).

testified that there are 25,000 additional sedentary jobs in the national economy that Ms. Parish could perform, fixing the true number of jobs suitable for Ms. Parish at 64,000.

In support of his first argument, the Commissioner points the Court to two Seventh Circuit cases: *Schmitz v. Colvin*, 124 F.4th 1029 (7th Cir. 2024) and *Thorpe v. Bisignano*, 148 F.4th 432 (7th Cir. 2025). In *Schmitz*, a VE testified that a Social Security claimant "could perform six types of unskilled light or sedentary jobs that were available in substantial numbers in the national economy," but did not identify the sources upon which she based this testimony. 124 F.4th at 1032. The claimant's counsel failed to question the VE "as to the foundation for her position estimates" and "made no objection to the sufficiency of the vocational expert's testimony, whether at the hearing or in the post-hearing briefing." *Id.* Because of this failure, the District Court found that the claimant had forfeited any objections on these grounds. *Id.*

In its opinion affirming the District Court, the Seventh Circuit explained that, while the Commissioner bears the burden at step five, "requiring a claimant to raise a timely objection to the sufficiency of a vocational expert's testimony does not improperly shift that burden to the claimant." *Id.* at 1033. "[A]ssuming no obvious flaws," an ALJ may credit the VE's testimony where a claimant has failed to put the VE's "foundation or methodology into issue and the expert's testimony is otherwise uncontradicted." *Id.* But the ALJ still must "hold the VE to account for the reliability of his job-number estimates," and "cannot accept testimony from a VE that is facially implausible or incoherent." *Id.*

The Seventh Circuit then applied this reasoning to slightly different facts in *Thorpe*, a case where the claimant's counsel asked a VE for the source of his testimony but did nothing to directly challenge the reliability of the VE's methodology. 148 F.4th at 436–37. The Seventh Circuit held that such general questioning about methodology was not enough to preserve the issue. *Id.* Instead, a claimant's counsel "must object or indicate that he believed the methodology was unreliable." *Id.* (citation omitted).

In his brief, the Commissioner does not contest that there is a conflict between the 30,000 "assembler" jobs the VE testifies exist and the DOT number for "beader" that she cites to support this. He acknowledges that "it is likely the vocational expert misspoke when she gave the DOT code associated with the assembler position." (ECF 22 at 5 n.3). But this, he maintains, "does not change the outcome of this case" because Ms. Parish has forfeited any challenges to the VE's methodology. (*Id.*) Leaning on *Schmitz* and *Thorpe*, the Commissioner argues that Ms. Parish missed her chance to challenge the VE's methodology when she failed to raise the issue of the DOT number at the administrative hearing or in a post-hearing brief. Because Ms. Parish's methodology arguments are forfeited and she has "not identified anything about the VE testimony that was implausible or incoherent," the Commissioner urges this Court to affirm the ALJ. (ECF 22 at 4).

Both parties agree that the VE's testimony that 30,000 assembler jobs exist in the national economy was not consistent with the DOT number she provided in support. And both parties agree that Ms. Parish did not challenge the VE's methodology at the administrative hearing or in post-hearing briefing. But on appeal, Ms. Parish does not

challenge the way the VE reached her results. Instead, she points out the facial incoherency of the results the VE reached and objects to the ALJ's adoption of the VE's testimony on that basis.

As Ms. Parish correctly notes, the ALJ had an affirmative duty under SSR 00-4p to resolve apparent conflicts between the DOT and VE testimony.[2] The ALJ herself acknowledged this in her opinion. "Pursuant to SSR 00-4p," she wrote, "the undersigned has determined that the vocational expert's testimony is consistent with the information contained in the Dictionary of Occupational Titles (DOT) and Selected Characteristics of Occupations (SCO)." (R. 26). But rather than correct what the Commissioner represents as the VE's verbal misstep and resolve the disconnect between the position of assembler and the DOT number for beader, the ALJ "accept[ed] the vocational expert's testimony," (R. 27), and reproduced this "incoheren[cy]" in her opinion, *Schmitz*, 124 F.4th at 1023.

The question here is not whether Ms. Parish forfeited her right to challenge methodology on appeal. It is whether the ALJ neglected her affirmative duty to resolve the apparent conflict between the DOT number the VE provided and the VE's testimony. Given the incorporation of this conflict into her opinion, it seems clear that she did. And this error was not harmless. "Assembler" is a role with 30,000 jobs, and "beader" is a role with 39. Thus, the VE's testimony would fix the total number of representative jobs at 39,000, while the DOT numbers the VE cited would fix it at 9,039.

[2] SSR 00-4p has since been rescinded by SSR 24-3p. But SSR 24-3p did not become effective until January 6, 2025, well after all administrative proceedings in this case had concluded, so SSR 00-4p applies for purposes of this appeal.

While the Seventh Circuit has affirmed opinions finding fewer than 39,000 jobs significant, the Commissioner has not identified, and the Court cannot find, in-circuit authority that 9,039 jobs or fewer could be significant. Thus, the ALJ's decision "lacks evidentiary support" for its conclusion that the Commissioner carried his burden at step five. *Lopez*, 336 F.3d at 539 (citations omitted).

The Court need not dwell on the Commissioner's second argument. Though the record reflects that the VE testified to the existence of 25,000 additional sedentary jobs, (R. 67–68), there is no indication in the ALJ's opinion that she accepted this number or relied on it to reach her decision. Instead, the ALJ briefly notes that the VE "testified that even if the claimant were limited to the sedentary exertional level, there were jobs that the claimant could perform." (R. 26). The existence of some unspecified number of "jobs that the claimant could perform" does not serve as substantial evidence that such jobs exist in significant numbers in the national economy.

**CONCLUSION**

For the reasons above, the Commissioner's Decision is **REVERSED** and **REMANDED** for further consideration as set forth in this order.

SO ORDERED on September 4, 2026.

*/s/ Cristal C. Brisco*
CRISTAL C. BRISCO, JUDGE
UNITED STATES DISTRICT COURT